UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER MILLER, # 185506,            )
       Plaintiff,                              )
                                                     )   No. 1:13-cv-19
-v-                                                    )
                                                     )   HONORABLE PAUL L. MALONEY
MARY BERGHUIS, et al.,                  )
       Defendants.                          )
_____)

**OPINION AND ORDER MODIFYING AND ADOPTING REPORT AND
RECOMMENDATION AND DISMISSING COMPLAINT**

    Walter Miller, a prisoner under the control of the Michigan Department of Corrections (MDOC), filed this lawsuit under 42 U.S.C. § 1983. Miller alleges he was unlawfully retaliated against in violation of his rights under the First Amendment. The magistrate judge reviewed the complaint and issued a report recommending the complaint be dismissed for failure to state a claim upon which relief may be granted. (ECF No. 31 R&R.) Miller filed objections. (ECF No. 32 Obj.) Defendants filed a response.[1] (ECF No. 38.) Miller then filed two motions to supplement. (ECF Nos. 33-36 and 43-45), which were granted (ECF No. 47). Defendants, with leave of the Court, filed a single response to the supplements. (ECF No. 48.)

**I.**

    After being served with an R&R issued by a magistrate judge, a party has fourteen days to file written objections to the proposed findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). A district court judge reviews de novo the portions of the R&R to which objections

---

[1] Miller filed a reply to Defendants' response. (ECF No. 39.) Miller's reply is not authorized by statute, 28 U.S.C. § 636(b)(1); federal rule, Fed. R. Civ. P. 72(b)(2); or local rule, W.D. Mich. LR Civ. P. 72.3(b). Miller did not seek leave to file his reply. Rather than striking this document, the Court opts not to consider it when resolving the pending matters.

have been filed. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam) (holding the district court need not provide de novo review where the objections are frivolous, conclusive or too general because the burden is on the parties to "pinpoint those portions of the magistrate's report that the district court must specifically consider").

## II.

Miller does not object to any of the factual findings in the R&R. Miller raises objections only to the legal conclusions contained in the R&R.

**A. Plaintiff did not enjoy any constitutional right to be housed in the prison of his choice. His transfer from LRF to MTU is "not subject to audit under the Due Process Clause."** *Meachum v. Fano*, **427 U.S. 215, 224 (1976). (R&R 3 PgID 188).**

Miller objects to this legal conclusion. (Obj. 2-3 PgID 191-92.) Miller argues prison officials may not transfer prisoners to a new prison in retaliation for exercising his or her First Amendment rights.

Miller's objection is OVERRULED. Miller's objection does not address either conclusion he identifies in the R&R. Miller did not have a constitutional right to be housed in a particular prison and his transfer does not give rise to a Due Process claim. None of Miller's arguments undermine these conclusions.

**B. Plaintiff did not have a protected liberty or property interest in a position as an LRF unit representative. (R&R 3 PgID 188).**

Miller objects to this legal conclusion. (Obj 3-5 PgID 192-94.) Miller argues that his conduct as an elected member of the Warden's Forum was protected, not because he had any liberty

interest in the position, but because he was helping other prisoners access the courts.

Miller's objection is OVERRULED.  Again, Miller's objection does not address the conclusion in the R&R he identifies.  Miller does not have a protected liberty interest or a property interest in his position as a housing unit representative.

**C.  Prisoners have no constitutionally protected liberty or property interest in prison employment under the Fourteenth Amendment.  (R&R 3 PgID 188).**

Miller objects to this legal conclusion.  (Obj. 6 PgID 195.)  Miller argues the loss of his job can constitute an adverse impact.

Miller's objection is OVERRULED.  Miller's objection does not address the legal conclusion he identifies in the R&R.  Prisoners do not have a constitutional right to any particular job even to a job generally.

**D.  Plaintiff's claims fare no better when cast as "retaliation" in violation of his First Amendment Rights for the protected conduct of participating in the Warden's Forum.  It is "well-established [] that participation in the Warden's Forum is not protected conduct."**

Miller objects to this legal conclusion.  (Obj. 6-8 PgID 195-97.)  Miller argues participation in the Warden's Forum can constitute protected conduct.  Much of Miller's arguments supporting his objections are relevant here.  Miller distinguishes the holding in *Cromer v. Dominguez*, 103 F.App'x 570, 573 (6th Cir. 2004) from the holding in *King v. Zamiara*, 150 F.App'x 485 (6th Cir. 2005).

Miller's objection is OVERRULED.  The Report and Recommendation is MODIFIED to incorporate this section.

Miller has not established that his participation in the Warden's Forum constituted protected

conduct. Miller insists that issues affecting two or more prisoners can only be raised in the Warden's Forum, citing MDOC Policy Directive 03.02.130. Miller misinterprets the policy. Grievances may be filed by prisoners "regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement *which directly affect the grievant*[.]" MDOC Policy Directive 03.02.130 ¶ E  (effective 07/09/07) (italics added). However, "[t]wo or more prisoners and/or parolees may not *jointly* file a single grievance regarding an issue of mutual impact or submit identical grievances regarding a given issue *as an organized protest.*" *Id.* ¶ F (italics added). The limitation on filing grievances Miller asserts is not supported by the language of the Policy Directive. When a prisoner has a concern about the content of a policy or procedure, the prisoner "may direct comments to the Warden's Forum[.]" *Id.* ¶ F.1.

The Sixth Circuit Court of Appeals has not issued a published opinion addressing a retaliation claim arising from a prisoner's participation in the Warden's Forum. The Sixth Circuit has resolved several appeals involving retaliation claims made by prisoners who served on the Warden's Forums at their respective institutions. In *Cromer*, the plaintiff alleged, among other things, the defendants conspired to retaliate against him "for performing his duties as a 'unit representative'" in the Warden's Forum. *Cromer*, 103 F.App'x at 571. The panel affirmed the dismissal of the retaliation claim.

> The record fails to establish such a claim because Cromer has not established that he was engaging in First Amendment activity as a warden's forum representative. Cromer has no liberty or property interest in his position as a unit representative on the warden's forum.  Furthermore, Cromer has no First Amendment right to represent other inmates in presenting their grievances absent a showing that "the inmate[s] receiving the assistance would otherwise be unable to pursue legal redress."  Cromer has not demonstrated that the inmates he represented on the warden's forum could not have been represented by another inmate, or that they could not bring any concerns they may have to the attention of prison officials without Cromer's assistance.

4

*Id.* at 573 (internal citations omitted); *see VanDiver v. Martin*, 48 F.App'x 517, 519-20 (6th Cir. 2002) (same). The result was different in *King*. King, who was a member of the Warden's Forum, alleged he was retaliated against by prison officials for his participation in a class-action lawsuit and for assisting other inmates file grievances. *Id.* at 486. King submitted three affidavits to support his retaliation claim. Two prisoners stated that they were uneducated in the law and would have been unable to seek effective redress of their grievances without the plaintiff's assistance. *Id.* at 487. The other affidavit was from a translator who stated that the plaintiff's assistance was needed for Spanish-speaking prisoners to seek effective redress of their grievances. *Id.* Finding that the plaintiff's retaliation claim should not be dismissed, the panel mentioned King's role in the Warden's Forum but the assistance he provided to other prisoners who were filing grievances, supported fully by affidavits, was the basis for permitting the retaliation claim to proceed.

> This court has held, however, that an inmate engages in protected activity by providing legal assistance when his assistance is *necessary* to provide another inmate with constitutionally-protected access to the courts. King was elected to the Warden's Forum as a representative of his housing unit pursuant to MDOC Policy 04.01.150. According to that policy, King was the person that prisoners in his unit should contact about "concerns that have not been resolved at the unit level." King was not a jailhouse lawyer merely "hanging a shingle" with hopes of attracting business; he was the appointed representative to whom the officials told other inmates to turn for the resolution of their grievances.
> Besides alleging that his representative status rendered his conduct protected, King has produced sufficient evidence in the form of three affidavits to demonstrate the necessity of his assistance.

*Id.* at 492-93 (italics in original; internal citations omitted).

Because neither is published, *Cromer* and *King* are persuasive authority only. In both cases, the Sixth Circuit acknowledged that an inmate who provides necessary assistance to another inmate to access the courts engages in protected conduct. The Court finds the reasoning in *Cromer* persuasive. The Warden's Forum functions as an advisory board. Individual representatives of a

housing unit operate only as "advisors" to the administration. MDOC Policy Directive 04.01.150 ¶ B (effective 11/01/10). In the Warden's Forum, housing unit representatives "assist" the Warden in "identifying and resolving problems which exist in the general population of the institution." *Id.* ¶ L. Any member of the Warden's Forum would be able to raise concerns affecting the general population. Therefore, Miller's assistance was not *necessary* for any individual prisoner's access to the courts.

To the extent Miller interprets *King* as holding that raising issues in the Warden's Forum constitutes protected conduct, he misreads the case. Some language in *King*, quoted by Miller and quoted above, fails to clearly distinguish King's role in assisting needy individuals with their particular grievances and King's role as a representative on the Warden's Forum. The former is protected conduct; the latter is not. According to the affidavits filed by King, he was approached by the individuals for help with their individual grievances. *King*, 150 F.App'x at 487. King, however, could not have brought those individual grievances to the Warden's Forum. The section of the *King* opinion addressing the retaliation claim for assisting other prisoners ends with the following sentence. "Thus, since prisoners were required to lodge complaints with King as a prerequisite to access the courts and since King has presented uncontested affidavits stating that his help was necessary, he has presented sufficient evidence that his legal assistance to others constitutes protected conduct." *King*, 150 F.App'x at 493. However, no policy directive requires prisoners to bring their individual grievances to their housing unit representatives, assuming that King was the housing representative for the affiants, a fact not mentioned in the opinion.

In an effort to prove he was assisting other prisoners access the courts, in his objections, Miller directs the Court to Donald Williams' affidavit. (ECF No. 32-1 Williams Aff. PgID 204-06.)

Williams makes two assertions. First, he states that because Miller was his housing unit representative, he told Miller that he and other handicap aides were being denied access to religious services because the job detail was a twenty-four hour, seven-day-a-week appointment. (*Id.* ¶¶ 8 and 9.) Second, he and other Nation of Islam followers were subject to religious discrimination because the administration refused to allow outside speakers, "the same as the Christian Population." (*Id.* ¶ 10.) Williams' first complaint was not a proper topic for the Warden's Forum. *See* MDOC Policy Directive 04.01.150 ¶K ("Housing unit representatives shall not use their position to present individual complaints to the administration.") Because he was allegedly denied access to religious services, Williams could have filed an individual grievance. The second complaint may have been properly raised in the Warden's Forum. That conclusion does not require this Court to find that Miller engaged in protected conduct by raising the issue on Williams' behalf. Williams has not established that he requested any of the outside speakers that the administration refused to allow, or even that he was in a position to request the speakers. In fact, Miller states that he presented a request to bring in a speaker "on behalf of myself and the Nation of Islam study group." (ECF No. 33 Miller Aff. ¶ 16 PgID 209.) In other words, Miller's conduct at the Warden's Forum was not necessary to protect Williams' access to the courts.

Assuming, for the sake of argument only, that Miller could establish the protected conduct prong, Miller has not established the adverse action prong of a retaliation claim. The R&R did not address the adverse action prong. Miller, however, raised the issue as part of his first three objections. In order for the retaliation to rise to the level of a cognizable claim, the adverse action must create more than a de minimis injury. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). Miller has not alleged sufficient facts to show that his transfer rose to the level of an adverse

7

action. Miller alleges he was transferred from LRF to MTU, where he was placed in a two-man observation cell which was "infested with flies, spiders, ants, and other such pests and vermin." (Amended Compl. ¶ 21.)

Miller's allegation does not demonstrate the sort of adverse action, a transfer, that would deter a person of ordinary firmness from engaging in protected conduct. *See Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005). In addition, the Court notes that Miller is no stranger to prison transfers; he admits he has "been housed at nearly every Correctional Facility in the State[.]" (ECF no. 33 Miller Aff. ¶ 38 PgID 211.) The transfers have not deterred Miller from engaging in allegedly protected conduct. For the purpose of his retaliation claim, Miller has alleged only that Defendants caused the transfer. Miller has not alleged any facts that allow the inference that Defendants knew or would have known about the circumstances which Miller claims made the transfer adverse. "Only those consequences that inextricably follow from a defendant's alleged retaliatory conduct (a transfer from filling out a transfer screen, for instance) would be considered in determining whether the plaintiff suffered an adverse action." *Siggers-El*, 412 F.3d at 702 (finding that reduced access to the courts was a foreseeable consequence of the transfer because the plaintiff lost his high paying job that he needed to pay for his attorney and the transfer also made it more difficult for the attorney to visit the plaintiff because the two were farther apart). Nothing in the Amended Complaint allows for the inference that all cells at MTU were infested or that Defendants had any role in placing Miller in any particular cell at MTU.

The cases on which Miller relies to show that the transfer was an adverse action are readily distinguishable. *Hill v. Lappin*, 603 F.3d 468 (6th Cir. 2010) involved two distinct allegations of adverse action. First, the plaintiff alleged he was placed in segregated housing in retaliation for

8

filing grievances. *Id.* at 469. The court noted that segregated housing typically involved an increase in restrictions and a reduction in privileges. *Id.* at 474. As a result, placing a prisoner in administrative segregation in retaliation for protected conduct may constitute an adverse action. *Id.* Second, the plaintiff alleged prison staff threatened to transfer him to the lock-down unit at another facility. *Id.* Because the lock-down unit would increase restrictions and reduce privileges, the allegation satisfied the adverse action prong of a retaliation claim. *Id.* at 475. Miller has not alleged that he was transferred to a facility that reduced his privileges and increased his restrictions. *See Wesselman v. Ashley*, 899 F.2d 1223 (6th Cir. Apr. 10, 1990) (unpublished table opinion) (involving a transfer to a "higher-level security prison"); *Smith v. Maschner*, 899 F.2d 940, 942, 948-49 (10th Cir. 1990) (finding evidence that the prisoner was placed in disciplinary segregation after filing lawsuits sufficient to create a genuine issue of material fact for a retaliation claim); *Cain v. Lane*, 857 F.2d 1139, 1140-41 (7th Cir. 1988) (involving a claim for retaliation, that was not addressed by the district court, where the plaintiff was placed in segregation after presenting grievances to the prison administration).

**E. 42 U.S.C. § 1997e(c)(1) states that the "court shall on its own motion . . . dismiss any action . . . if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted . . . ." I recommend the dismissal of this lawsuit because plaintiff's amended complaint fails to state a claim on which relief may be granted. (R&R 1 PgID 186).**

Miller objects to this recommendation. (Obj. 8-13 PgID 197-202.) Miller argues the Court ordered the complaint to be served and noted in that order that the initial screening of the complaint found that the claims were not frivolous. (ECF No. 5.) Miller argues, in the Case Management Order, the Court again noted that it had screened the complaint and found that the claims were not

9

frivolous. (ECF No. 11.) Miller argues the complaint states a claim upon which relief can be granted.

Miller's objection is OVERRULED. The statute cited by the magistrate judge authorizes the Court to dismiss a claim at any time, if the claim is found to be frivolous. *See Barksdale v. Rauschel*, 230 F.3d 1357 (6th Cir. Sept. 18, 2000) (unpublished table opinion) (rejecting the plaintiff-prisoner's argument that the court erred in finding the complaint failed to state a claim because the court had already ordered the complaint be served). Additionally, "'[d]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment.'" *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) (quoting *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991); *see* Fed. R. Civ. P. 54(b) (explaining that any decision that adjudicates fewer than all of the claims "does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all of the claims and all of the parties' rights and responsibilities.").

## ORDER

For the reasons explained in the R&R and this opinion, the Amended Complaint fails to state a claim upon which relief can be granted. The R&R is **ADOPTED, WITH MODIFICATIONS,** as the opinion of this Court. The complaint is **DISMISSED** for failure to state a claim upon which relief may be granted. **IT IS SO ORDERED.**

Date:   May 13, 2014                             /s/ Paul L. Maloney
                                                 Paul L. Maloney
                                                 Chief United States District Judge